01

02

03

04

05

06

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

07

AT SEATTLE

08

HARMONY M.M. NASON,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀CASE NO. C10-1492-JLR

09

⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

10

⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀REPORT AND RECOMMENDATION
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀RE: SOCIAL SECURITY DISABILITY

11

MICHAEL J. ASTRUE, Commissioner⠀)⠀⠀APPEAL
of Social Security,⠀⠀⠀⠀⠀⠀⠀⠀)

12

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀⠀⠀)

13

_____ )

14

⠀⠀⠀⠀Plaintiff Harmony Nason proceeds through counsel in her appeal of a final decision of

15

the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16

denied plaintiff's applications for Supplemental Security Income (SSI) and Disability

17

Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ).   Having

18

considered the ALJ's decision, the administrative record (AR), and all memoranda of record,

19

the Court recommends that this matter be REMANDED for further administrative proceedings.

20

/ / /

21

/ / /

22

/ / /

REPORT AND RECOMMENDATION
PAGE -1

01      **FACTS AND PROCEDURAL HISTORY**

02      Plaintiff was born on XXXX, 1975.[1]   Her educational level is not entirely clear.   (*See*,

03  *e.g.*, AR 164 (plaintiff indicated she completed one year of college) and AR 245 (plaintiff

04  indicated she dropped out of high school and put herself through vocational school for

05  computers).)   She previously worked in data entry/customer service.   (AR 160).

06      Plaintiff filed applications for DIB and SSI in August 2006, alleging disability

07  beginning December 31, 2003 due to depression, anxiety, mood disorder, polycycstic ovarian

08  syndrome, and chronic pain.   (AR 139-46, 158.)   Her date last insured for DIB is December

09  31, 2008.   (AR 49.)   Plaintiff's applications were denied at the initial level and on

10  reconsideration, and she timely requested a hearing.

11      ALJ Verrell Dethloff held a hearing on May 8, 2009, taking testimony from plaintiff.

12  (AR 10-39.)   On June 26, 2009, the ALJ issued a decision finding plaintiff not disabled.   (AR

13  47-57.)

14      Plaintiff timely appealed.   The Appeals Council, on July 15, 2010, denied plaintiff's

15  request for review (AR 1-4), making the ALJ's decision the final decision of the Commissioner.

16  Plaintiff appealed this final decision of the Commissioner to this Court.

17      **JURISDICTION**

18      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

19      **DISCUSSION**

20      The Commissioner follows a five-step sequential evaluation process for determining

21  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

22      1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -2

01  whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

02  must be determined whether the claimant is gainfully employed.   The ALJ found that plaintiff

03  had not engaged in substantial gainful activity since December 31, 2003, the alleged onset date.

04      At step two, it must be determined whether a claimant suffers from a severe impairment.

05  The ALJ found plaintiff's pelvic strain severe.

06      Step three asks whether a claimant's impairments meet or equal a listed impairment.

07  The ALJ concluded plaintiff did not have an impairment or combination of impairments that

08  met or medically equaled a listing.

09      If a claimant's impairments do not meet or equal a listing, the Commissioner must

10  assess residual functional capacity (RFC) and determine at step four whether the claimant has

11  demonstrated an inability to perform past relevant work.   The ALJ assessed plaintiff as able to

12  perform the full range of light work.   (AR 54.)   With this RFC, the ALJ found plaintiff able to

13  perform her past relevant work as a data entry/customer service representative.

14      If a claimant demonstrates an inability to perform past relevant work, the burden shifts

15  to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

16  an adjustment to work that exists in significant levels in the national economy.   Finding

17  plaintiff not disabled at step four, the ALJ did not proceed to step five.

18      This Court's review of the ALJ's decision is limited to whether the decision is in

19  accordance with the law and the findings supported by substantial evidence in the record as a

20  whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

21  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

22  reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ failed to properly identify all of her severe impairments and to consider all of her functional limitations, failed to properly evaluate the medical evidence, erred in assessing her credibility, improperly determined her RFC, and erroneously found she could perform her past relevant work.[2]  She also argues that the Appeals Council erred in failing to remand her claim for a new hearing based on new evidence.  Plaintiff requests remand for an award of benefits or, in the alternative, remand for further administrative proceedings before a different ALJ.  The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

## Severe Impairments and Functional Limitations

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

---

2 Plaintiff's Opening Brief contains a lengthy Statement of Facts.   The parties are reminded that such a recitation is unnecessary and, in fact, is discouraged.   Rather, a discussion of the relevant facts and portions of the administrative record should be conducted in the context of specific assignments of error.

REPORT AND RECOMMENDATION
PAGE -4

01  1996) (quoting Social Security Ruling (SSR) 85-28).   "[T]he step two inquiry is a de minimis

02  screening device to dispose of groundless claims."  *Id.* (citing *Bowen*, 482 U.S. at 153-54).

03  An ALJ is also required to consider the "combined effect" of an individual's impairments in

04  considering severity.   *Id.*   Also, the ALJ must thereafter consider the limiting effects of all of

05  plaintiff's impairments, including those that are not severe, in determining RFC. §§

06  404.1545(e), 416.945(e); SSR 96-8p.

07       As stated above, the ALJ in this case found only a pelvic disorder to be severe.   He

08  stated that chronic pain syndrome is not a medically determinable impairment (AR 51 n.1 and

09  52) and found plaintiff's mental impairments not severe (AR 51-54).

10       Plaintiff argues that the ALJ failed to identify all of her impairments at step two,

11  including post-traumatic stress disorder (PTSD), major depressive disorder, chronic pain

12  syndrome, bilateral pudendal nerve neuralgia, and myofascial pain.   She further argues that the

13  ALJ's failure to consider all of those impairments at subsequent steps in the sequential

14  evaluation constituted reversible error.  *Smolen*, 80 F.3d at 1290 ("Having found Smolen to

15  suffer from only one 'severe' impairment at step two, the ALJ necessarily failed to consider at

16  step five how the combination of her other impairments - and resulting incapacitating fatigue -

17  affected her residual functional capacity to perform work.")

18       The Commissioner argues that the ALJ properly considered plaintiff's functional

19  limitations based on his evaluation of the medical record and her credibility.   He maintains that

20  any error at step two, even in finding chronic pain syndrome to be not medically determinable,

21  was harmless.  *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir.

22  2006) (recognizing application of harmless error in Social Security context where a "mistake

REPORT AND RECOMMENDATION
PAGE -5

01  was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.")

02  In response, plaintiff maintains the ALJ's incorrect presumption as to chronic pain

03  tainted the entire analysis of her claim and that, as required by *Stout* for a finding of harmless

04  error, it cannot be said that no reasonable ALJ could have reached a different disability

05  determination in the absence of this error.  *Id*. at 1056.  Plaintiff notes, in particular, the fact

06  that examining physician Dr. John Shelton, whose opinions the ALJ gave "greater weight" (AR

07  53), diagnosed her with a "[p]ain disorder associated with psychological factors."  (AR 297.)

08  For the reasons described below, the Court agrees that the ALJ's findings at step two were

09  insufficient and implicated the remainder of the decision.

10  A.    Chronic Pain

11  The ALJ's discussion of the medical evidence reflects that plaintiff sought treatment for

12  chronic pain in as early as 2003.  (*See* AR 49.)  For instance, in December 2003, Dr.

13  Deborah Nalty began plaintiff on medication to treat symptoms of anxiety and chronic pain

14  (AR 366), and later, in July 2005, assessed plaintiff with chronic pain syndrome.  (AR 368.)

15  (*See also*, *e.g.*, AR 229 (a physical therapist assessed "pelvic pain of uncertain etiology with

16  pelvic muscle hypertonicity, decreased strength and sensation").)  As noted by the ALJ, the

17  record contains evidence of generally benign examination findings and an absence of acute

18  distress on examination.  (AR 50-51.)  However, it also, as described in detail below, contains

19  a number of medical opinions and other evidence relevant to plaintiff's complaints of pain from

20  both a physical and psychological perspective.

21  In assessing the opinions of the medical providers, the ALJ rejected chronic pain

22  syndrome as a "medically determinable impairment":

01      A notation of Chronic Pain Syndrome is merely the designation provided by the practicioners [sic] in question <u>for</u> the pain alleged.  Chronic pain syndrome

02      means only that there are complaints of pain.  **Caenen v. Secretary of Health and Human Services**, 722 F. Supp. 629, 631 (D. Nev., 1989).  This diagnosis

03      does not equate to disability under the Social Security Act.  *See*, *generally*, **Young v. Heckler**, 803 F.2d 963, 968 (9 Cir., 1986); *Compare*, **Beecher v.**

04      **Heckler**, 756 F.2d 693, 695-96 N.2 (9 Cir., 1985).  Because Chronic Pain Syndrome is neither a mental disease (compare, Somatization Disorder,

05      Diagnostic and Statistical Manual of Mental Disorders, 300.81, Pain Disorder 307.80 (4th. ed., 1994 American Psychiatric Ass'n), nor a physical disease, it is

06      not a medically determinable impairment for purposes of analyzing credibility; that is, it cannot provide a predicate for the regulatory requirement of an

07      impairment that could reasonably be expected to cause the pain alleged.

08  (AR 51, n.1.)   The ALJ's conclusion on this point led, at least in part, to his rejection of various

09  medical providers' opinions.   (*See supra* and AR 51-54.)

10      Plaintiff challenges the ALJ's finding with respect to chronic pain disorder as contrary

11  to law.  She points to section 12.07 of the Listing of Impairments describing Somatoform

12  disorders, defined as "[p]hysical symptoms for which there are no demonstrable organic

13  findings or known physiological mechanisms[,]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07.

14  She also points to the three subtypes of pain disorder recognized in the Diagnostic and

15  Statistical Manual of Mental Disorders (DSM-IV-TR) – pain disorder associated with

16  psychological factors (307.80); pain disorder associated with both psychological factors and a

17  general medical condition (307.89); and pain disorder associated with a general medical

18  condition – only the latter of which is not considered a mental disorder and is used to facilitate

19  differential diagnosis.   DSM-IV-TR 499 (4th ed. 2000).

20      The ALJ's finding with respect to chronic pain syndrome/disorder appears to lack both

21  medical and legal support.  The DSM-IV-TR recognizes two subtypes of pain disorder as

22  mental disorders.  *Id*.  Moreover, Ninth Circuit case law recognizes the existence of

pain-based impairments having "both a physical and psychological component." *Lester v. Chater*, 81 F.3d 821, 829-30 (9th Cir. 1996) (discussing a claimant's "acute pain", deemed "chronic pain syndrome" by a medical adviser) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991) (en banc) (recognizing that pain is "a completely subjective phenomenon" and that the Commissioner must consider all available evidence in assessing complaints of pain)). *See also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (stating physician's report was "not conclusive on the issue of the extent to which appellant suffered from chronic pain syndrome on a psychophysiologic basis[,]" and that, while it suggested the diagnosis, "it is not at all clear from the report that appellant suffers from disabling levels of lower back pain.")   As stated in *Lester*:  "Pain merges into and becomes a part of the mental and psychological responses that produce the functional impairments. The components are not neatly separable." *Id*.   In that case, the Ninth Circuit found that, because the consequences of the claimant's physical and mental impairments were "so inextricably linked," the Commissioner was required to "consider whether the[] impairments taken together result[ed] in limitations equal in severity to those specified by the listings."  *Id*.   Here, while the ALJ correctly stated that a diagnosis alone is not sufficient to establish a severe impairment, the Court finds no support for the conclusion that chronic pain syndrome is not a medically determinable impairment.

The ALJ's finding with respect to chronic pain cannot be deemed "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion[]" and, therefore, harmless. *Stout*, 454 F.3d at 1055.   A failure to list an impairment as severe at step two can be deemed harmless where associated limitations are considered at step four.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).   In this case, there is nothing in the ALJ's RFC assessment indicating

REPORT AND RECOMMENDATION
PAGE -8

01  consideration of pain-related limitations at step four.  (AR 54 (finding plaintiff capable of

02  performing the full range of light work).)  In fact, given the ALJ's finding at step two, his

03  assessment of the medical opinions related to pain, and the assessment of plaintiff's credibility,

04  it would appear that he did not consider pain as a factor relevant to the step four finding.  As

05  argued by plaintiff, the ALJ's chronic pain finding at step two tainted the remainder of the

06  analysis and necessitates a remand of this case.

07  B.      Other Impairments

08          The Commissioner does not directly respond to plaintiff's step two argument as it

09  relates to other impairments.  He, instead, argues generally that the ALJ properly evaluated the

10  medical record and plaintiff's credibility in assessing functional limitations.  The

11  Commissioner does, however, concede that, contrary to the ALJ's finding, one physician

12  identified a number of observations to support a PTSD diagnosis.  (Dkt. 14 at 13 (citing AR

13  350).)

14          As reflected below, the ALJ's assessment of the medical record was insufficient in a

15  number of respects, including evidence associated with PTSD, depressive disorder, bilateral

16  pudendal nerve neuralgia, and myofascial pain.  Also, the ALJ's error in relation to chronic

17  pain may have implicated his consideration of plaintiff's other impairments.  Accordingly, the

18  ALJ should also reconsider the severity of these other impairments on remand.

19                                  Medical Opinions

20          In evaluating the weight to be given to the opinions of medical providers, Social

21  Security regulations distinguish between "acceptable medical sources" and "other sources."

22  Acceptable medical sources include, for example, licensed physicians and psychologists, while

REPORT AND RECOMMENDATION
PAGE -9

01    other non-specified medical providers are considered "other sources." 20 C.F.R. §§

02    404.1513(a) and (e), 416.913(a) and (e), and SSR 06-03p.

03          In general, more weight should be given to the opinion of a treating physician than to a

04    non-treating physician, and more weight to the opinion of an examining physician than to a

05    non-examining physician.  *Lester*, 81 F.3d at 830.  Where not contradicted by another

06    physician, a treating or examining physician's opinion may be rejected only for "'clear and

07    convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

08    Where contradicted, a treating or examining physician's opinion may not be rejected without

09    "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

10    *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

11          The ALJ may reject physicians' opinions "by setting out a detailed and thorough

12    summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

13    making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*,

14    881 F.2d at 751).  Rather than merely stating his conclusions, the ALJ "must set forth his own

15    interpretations and explain why they, rather that the doctors', are correct."  *Id.*  (citing *Embrey*

16    *v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

17          Less weight may be assigned to the opinions of other sources.  *Gomez v. Chater*, 74

18    F.3d 967, 970 (9th Cir. 1996).  However, "[s]ince there is a requirement to consider all relevant

19    evidence in an individual's case record," the ALJ's decision "should reflect the consideration of

20    opinions from medical sources who are not 'acceptable medical sources' and from

21    'non-medical sources' who have seen the claimant in their professional capacity."  SSR

22    06-03p.  "[T]he adjudicator generally should explain the weight given to opinions from these

01 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or

02 decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when

03 such opinions may have an effect on the outcome of the case." *Id.*   *See also Smolen*, 80 F.3d at

04 1288-89 (ALJ must provide germane reasons as to lay testimony).

05 A.   <u>Drs. Geordie Knapp, Lee Gustafson, and John Shelton</u>

06      Examining physician Dr. Geordie Knapp diagnosed plaintiff with mood disorder due to

07 undetermined health problems, and rule out amnestic disorder in April 2006.   (AR 246.)   She

08 found moderate, marked, and severe limitations in plaintiff's abilities to perform basic work

09 tasks, and deemed her seriously disturbed.    (AR 247-48.)   The report reflected Dr. Knapp's

10 consideration of plaintiff's reports of pain.   (*See* AR 246 (associated depressed mood with

11 pain) and AR 247 (stating, in relation to cognitive limitations:   "Daily routine dependent on

12 level of pain.")) The ALJ gave these opinions "little weight" as her "diagnosis of mood disorder

13 is predicated on the claimant's pain complaints[]" which the ALJ found lacking in credibility.

14 (AR 51-52.)

15      In April 2009, examining physician Dr. Lee Gustafson diagnosed PTSD and dysthymic

16 disorder, and possible pain disorder associated with psychological and physical condition.

17 (AR 347.)   He assessed a number of moderate and marked functional limitations due to, *inter*

18 *alia*, chronic pain, severe anxiety, and severe mistrust, and deemed plaintiff seriously disturbed.

19 (AR 348-49.)   On an accompanying narrative evaluation, Dr. Gustafson assessed chronic

20 PTSD and chronic pain secondary to medical condition, and described plaintiff as, *inter alia*,

21 extremely guarded, tense, mistrustful, anxious, constricted, and suspicious, and wrote:   "She

22 has a chronic medical condition that results in chronic pain."   (AR 350.)   The ALJ assessed

REPORT AND RECOMMENDATION
PAGE -11

01  Dr. Gustafson's opinions as follows:

02      Dr. Gustafson's opinion is accorded little evidentiary weight, as he did not
        document symptoms to support the diagnosis of PTSD.  Chronic pain is not a
03      medically determinable mental impairment.  The claimant's allegations lack
        credibility, as discussed below.  To the extent Dr. Gustafson relied on her
04      subjective complaints, his opinion is further discounted.

05  (AR 52.)

06      The ALJ gave "greater weight" to the April 2006 opinions of examining physician Dr.

07  John Shelton.  (AR 53.)  Dr. Shelton diagnosed plaintiff with major depression, single

08  episode, related to both psychological and medical issues, and pain disorder associated with

09  psychological factors, and assessed a Global Assessment of Functioning (GAF) of 50,

10  indicating serious symptoms or any serious impairment in functioning.  *See* DSM-IV-TR 34.

11  As described by the ALJ:

12      The claimant reported difficulty with concentration and memory loss.  She
        reported that she stopped working in part due to pelvic pain.  She also reported
13      symptoms of anxiety and depression.  She had an upcoming court case
        involving domestic abuse/sexual assault.  She was in counseling at Compass
14      Health.

15      On mental status examination, the claimant's content of thought was good.  She
        had no difficulty remembering 3/3 objects after five minutes.  She was able to
16      spell the word "world" forward and backwards.  She was also able to complete
        serial 7s without error.  Her results on the WMS-III were in the average range.
17      The diagnoses included major depression, single episode, related to both
        psychological and medical issues, and pain disorder associated with
18      psychological factors.  Dr. Shelton commented that the claimant was **"funny,
        upbeat and had no trouble providing easy banter to her interactions with
19      me.  She appears bright."**  He stated, "It is clear that she is under a great deal
        of duress currently because of the domestic violence/sexual abuse difficulty
20      which confronts her **she is certainly not disabled by her anxiety or
        depression.  Nor is she disabled by her memory difficulties.  This woman
21      is capable of working from a psychological perspective"**.

22  (AR 52; emphasis in original; internal citation omitted.)

REPORT AND RECOMMENDATION
PAGE -12

01        The ALJ also considered Dr. Shelton's opinions in assessing plaintiff's functional

02   limitations, noting Dr. Shelton's report that plaintiff "was captivating, funny, upbeat and

03   bright[]" and had no difficulty with social interaction, as well as her performance in testing.

04   (AR 53.)   He observed that Dr. Shelton "conducted a more comprehensive evaluation,

05   including administration of the WMS-III," and his provision of "a detailed report to support his

06   conclusion that the claimant was capable of working from a psychological perspective."   (AR

07   53-54.)    Additionally, the ALJ took note of evidence from a State agency psychological

08   consultant, Dr. Cynthia Collingwood, who diagnosed major depressive disorder due to

09   psychological and medical issues and pain disorder associated with psychological issues, but

10   deemed plaintiff's mental impairments not severe and resulting in only mild limitations.   (AR

11   304-16.)

12        The Court finds the ALJ's assessment problematic in several respects.   First, the ALJ's

13   step two error in relation to chronic pain clearly impacted his consideration of the opinions of

14   Drs. Knapp and Gustafson.   Second, as conceded by the Commissioner, Dr. Gustafson did

15   describe symptoms supporting the PTSD diagnosis, such as rapid and pressured speech,

16   appearing extremely guarded, reluctant to share information, anxious, tense, mistrustful, and

17   constricted, and reports of chronic insomnia and occasional nightmares. (AR 350.)   *See also*

18   DSM-IV-TR 463-68 (describing PTSD symptoms).   Third, while Dr. Shelton did conduct a

19   more thorough mental status evaluation and ultimately concluded plaintiff was not disabled and

20   was capable of working, it is worth nothing that both Dr. Shelton and Dr. Collingwood

21   diagnosed plaintiff with a pain disorder associated with psychological issues, that Dr. Shelton

22   assessed a GAF of 50, and that opinions as to disability and ability to work are reserved to the

REPORT AND RECOMMENDATION
PAGE -13

01  Commissioner and, therefore, not "entitled to controlling weight or special significance."   SSR

02  96-5p.   Given all of the above, the Court concludes that the ALJ insufficiently assessed the

03  opinions of Drs. Knapp and Gustafson and that those opinions should be reconsidered on

04  remand.

05  B.   <u>Compass Health</u>

06      The ALJ described plaintiff's treatment at Compass Health as follows:

07      Treatment notes show complaints of depression and anxiety.   In August 2006,
        the claimant reported to Berry Thompson, MS, symptoms of depression and
08      difficulty with sleeping.   The claimant reported that she was a victim of assault.
        On mental status examination, the claimant was depressed, anxious, and fearful.
09      Ms. Thompson assessed major depressive disorder, moderate.   She assigned a
        **Global Assessment of Functioning score of 55**.   In March 2007, Carol
10      Ashley, MA, assigned a Global Assessment of Functioning of 50.   In June
        2007, the claimant reported to Ms. Ashley that her anxiety was up because she
11      had to be out of the house she was living in by that day.   The claimant stated
        that she was going to go to the library to spend some time and relax.   In June
12      2008, the claimant reported to June Norberg, BA, she had to be thankful she
        could function through her depression and anxiety.   She reported that she was
13      in a "weird funk" but her coping skills helped.   In August 2008, the claimant
        reported to Ms. Norberg that she was considering going to school in the fall.
14      She reported she needed to overcome her anxiety in order to do that.   She
        reported that she wanted to attend a group at Compass Health in the fall.

15

16  (AR 52-53; emphasis in original; internal citations omitted.)   The ALJ concluded that the

17  Compass Health treatment notes did not alter the finding that plaintiff did not have severe

18  mental impairments, explaining:   "The records do not contain assessments provided by

19  acceptable medical sources and in general do not include objective findings such as mental

20  status exams.   The claimant was slated for dialectical behavior therapy but reported in April

21  2009 that she did not want to do it."   (AR 54; citation to record omitted.)

22      As observed by plaintiff, the record contains other reports from Compass Health.   In

REPORT AND RECOMMENDATION
PAGE -14

01  September 2006, Carol Ashley diagnosed plaintiff with PTSD and major depressive disorder

02  and rated her GAF at 50, indicating serious symptoms.   (AR 496.)   Ashley wrote that plaintiff

03  was "having recurrent intrusive thoughts associated with recent traumatic event[s,]" and

04  "recurring irrational fears & episodes of flashbacks as well as avoidant behavior of situational

05  triggers."   (AR 496.)   Ashley also, in the March 2007 report described by the ALJ and in an

06  April 2008 report, repeated the PTSD and major depressive disorder diagnoses.   (AR 272, 504

07  (describing plaintiff's mental health symptoms as causing moderate impairments)[3] and AR 402

08  ("She has worked on reducing her anxiety level associated with PTSD but due to the number of

09  transitions she has experienced in the last couple of years this has been hard for her to do by her

10  report."))

11      As "other sources," the ALJ was required only to discuss and provide understandable

12  and germane reasoning in his assessment of the Compass Health providers' opinions.   Here,

13  the ALJ appropriately afforded their opinions less weight than those of acceptable medical

14  sources and pointed to the general absence of objective findings.

15      However, it is not entirely clear whether the ALJ considered all of the records from

16  these providers, such as the additional records from Ashley described above.   The ALJ also

17  took the April 2009 comment regarding dialectical behavior therapy (DBT) out of context.

18  The records reveal that plaintiff reported a change in counselor was not working out and, as a

19  result, that she "[n]ow" did not "even want to do D.B.T. (group).'"   (AR 370.)   The provider

20  indicated his intention to discuss a clinician and possibly a site change.   (*Id*.)   As noted by

21  ─────────────

22      3 Plaintiff identifies this report as coming from Thompson (Dkt. 13 at 16), while the ALJ
    associates it with Ashley (AR 52).   Although included on a report by Thompson, initials on the form
    appear to reflect that Ashley modified Thompson's report in March 2007.   (*See* AR 272, 504.)

REPORT AND RECOMMENDATION
PAGE -15

01  plaintiff, she testified in May 2009 as to her continued participation in DBT.  (AR 15-16.)

02  Finally, the ALJ's error at step two and errors in the assessment of other physicians' opinions

03  may well have impacted the assessment of the records from Compass Health.  As such, the

04  ALJ should reassess the opinions of the Compass Health providers on remand.

05  C.      Drs. Gordon Irving, Evangeline Erskine, and Timothy Timmons

06          The ALJ described the records from Drs. Evangeline Erskine and Timothy Timmons,

07  both with Sea Mar Community Health Center, as follows:

08          The claimant established care at Sea Mar Community Health Center in February
            2009.  She was interested in a referral to the University of Washington Pain
09          clinic and was "very frustrated with her care to date."  She complained of pain
            from the waist down, primarily on the left side.  She stated "she doesn't want us
10          to get any of her old records because they are of no value and she has gotten no
            help in the past."  Based on the claimant's reported history, she was assessed
11          with chronic pain syndrome.  On follow-up the claimant referred to black mold
            exposure.  She stated she did not want to talk about symptoms with doctors
12          "because she feels dismissed."  She required referral for a pain clinic and to
            naturopathy.  The claimant was described as well developed, well nourished
13          and **in no acute distress**.  The provider agreed to make the requested referrals.

14  (AR 50-51; citation and footnote omitted.)   It was within this discussion that the ALJ included

15  his finding with respect to chronic pain syndrome, excerpted above.  (*Id*. at 51, n.1.)   The ALJ

16  thereafter described findings from Dr. Gordon Irving:

17          In March 2009, Dr. Gordon A. Irving, MD, of Swedish Medical Center Pain
            Management Services saw the claimant for a consultation.   The claimant
18          reported symptoms of pelvic pain, bilateral pudendal nerve neuralgia and back
            pain.  On a scale of 0 to 10, the pain was 10 in interfering with sleep, general
19          activity, mood, walking ability, work, relations with others, and enjoyment of
            life.  The claimant reported no pain modulators.  She reported having two
20          sessions of pelvic floor physical therapy but "did not think this was going to be
            of benefit and did not go further."  She had had no other treatments.  The
21          claimant reported that she lived for 6 and half years in a condominium which
            had black mold.  She reported that she began to develop pain around 2001.

22

REPORT AND RECOMMENDATION
PAGE -16

01  Dr. Irving noted that the claimant's workup, such as CT scans, ultrasounds, blood work and brain MRI were normal.  On examination, the claimant was in

02  **no acute distress**.  She did not want the doctor to examine her abdomen or touch the skin or the legs.  She was oriented, with normal recent and remote

03  memory, and normal mood and affect.  **Her physical examination findings were generally normal, including straight leg raise to 90 degrees, and full**

04  **range of motion in the bilateral hips**.  She had low back tenderness.  Dr. Irving had no treatment plan other than to continue with counseling, and to

05  discuss medications with the primary care provider.

06  (AR 51; internal citations omitted; emphasis in original.)

07  As averred by the Commissioner, there is nothing in Dr. Irving's report necessarily

08  inconsistent with the ALJ's RFC assessment.  Also, while plaintiff asserts that Dr. Irving

09  opined that the effect on her function and quality of life was "[s]ignificant[,]" this appears to

10  reflect plaintiff's report, rather than Dr. Irving's opinion.  (*See* AR 343.)  However, for the

11  reasons described below, the ALJ should reconsider all of these medical opinions on remand.

12  Dr. Irving assessed differential diagnoses of bilateral pudendal nerve neuralgia and

13  myofascial pain.  (AR 343-45.)  Dr. Erskine, who saw plaintiff twice in one month, diagnosed

14  her with chronic pain syndrome.  (AR 335, 338.)  Dr. Timmons diagnosed her with chronic

15  pain syndrome and possible bilateral pudendal nerve neuralgia.  (AR 332-33.)  As stated

16  above, diagnoses, standing alone, do not establish severe impairments.  Also, it should be

17  noted that these records do not contain any opinions as to associated limitations.

18  Yet, critically, the ALJ appeared to explicitly reject the evidence from Drs. Erskine and

19  Timmons based on the erroneous conclusion that chronic pain syndrome does not constitute a

20  medically determinable impairment.   Also, as averred by plaintiff, the records from all three of

21  these physicians arguably provide support for the possibility that plaintiff had one or more

22  medical conditions that could reasonably be expected to cause pain.  For these reasons, the

REPORT AND RECOMMENDATION
PAGE -17

01    ALJ should reconsider these opinions on remand.

02                                    <u>Credibility</u>

03         Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

04    reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

05    *See also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony

06    unreliable, an ALJ must render a credibility determination with sufficiently specific findings,

07    supported by substantial evidence.  "General findings are insufficient; rather, the ALJ must

08    identify what testimony is not credible and what evidence undermines the claimant's

09    complaints."  *Lester*, 81 F.3d at 834.  "We require the ALJ to build an accurate and logical

10    bridge from the evidence to her conclusions so that we may afford the claimant meaningful

11    review of the SSA's ultimate findings."  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

12    "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

13    inconsistencies either in his testimony or between his testimony and his conduct, his daily

14    activities, his work record, and testimony from physicians and third parties concerning the

15    nature, severity, and effect of the symptoms of which he complains."  *Light v. Social Sec.*

16    *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

17         The ALJ in this case found plaintiff's statements concerning the intensity, persistence,

18    and limiting effects of her symptoms not credible to the extent inconsistent with the RFC

19    assessment, providing the following reasoning:

20         The claimant's failure to seek treatment undercuts her allegations of disabling
           pelvic pain.  For example, in March 2009, Dr. Irving noted the claimant had
21         two sessions of pelvic floor physical therapy but "did not think this was going to
           be of benefit and did not go further.  She has had no other treatments".  The
22         claimant is repeatedly described as being in no acute distress.  Her pain

REPORT AND RECOMMENDATION
PAGE -18

complaints have not been consistent.  For example, in February 2009 she reported that she had symptoms for three years, from the waist down primarily on the left side of her body.  In contrast, she reported to the Social Security Administration that she had first been bothered by her condition in 2001 and became unable to work because of the condition in 2003.  The claimant's allegations of lower extremity numbness are not confirmed by objective examination findings.  She has failed to cooperate with her physicians, for example by refusing to be examined, or refusing to provide details of her symptoms, or failing to follow up with recommended evaluations.  The claimant told Dr. Irving that she was homebound because of pain, that it was very difficult doing activities of daily living, and that on a scale of 1-10 the pain was a 10, interfering with basically everything.  In contrast, the claimant told a therapist at Compass Health that she had a fear of going out because of worrying about who she would run into and that this was related to "not knowing what to say".

With regard to the claimant's alleged memory and concentration problems, objective testing does not support those allegations.  On a mental status examination with Dr. Shelton, she had no difficulty remembering 3/3 objects after five minutes.  She was able to spell the word "world" forward and backwards.  She was also able to complete serial 7s without error.  She attained average scores on the WMS-III.  The claimant's representative attempted to discount Dr. Shelton's report, arguing that it was difficult to be put in a situation where one needed to be open with a stranger.  That argument has little weight, as the claimant bears the burden of establishing disability.  More to the point, Dr. Shelton's assessment is based on objective findings, including his observations of the claimant, mental status examination findings and the results of the WMS-III.

As for the opinion evidence, in determining the physical residual functional capacity, the undersigned considered a December 2005 report by Matt Davies, MD, who noted that the claimant was under his care for generalized malaise and cognitive dysfunction. He opined that the claimant was unable to participate in employment at that time.  That opinion is given little weight, as there is no evidence of a cognitive disorder, and "generalized malaise" is not a medically determinable impairment.  Opinions may properly be disregarded where no clinical or laboratory findings are furnished by the physician to support the opinion(s) tendered.  **Bayliss v. Commissioner, Social Security Administration**, 427 F.3d 1211 (9th Cir. 2005); **Connett v. Barnhart**, 340 F.3d 871, 875 (9th Cir., 2003) (holding that the ALJ properly rejected a treating physician's testimony in favor of an examining physician's statements because the treating physician's "extensive conclusions regarding [claimant's] limitations are not supported by his own treatment notes"); **Tonapetyan v.**

REPORT AND RECOMMENDATION
PAGE -19

01       **Halter**, 242 F.3d 1144, 1148 (9th Cir. 2001).  I accord no weight to this
opinion.  And I have no duty to recontact the doctor for clarification of
02 conclusory pronouncements.  **Younger v. Heckler**, 803 F.2d 963, 968 (9 Cir.
1986) (per curiam) ("In light of the conclusionary nature of Dr. Collins' March
03 26, 1981 report, it was appellant's responsibility to produce evidence either
confirming Dr. Collins' report or reviewing appellant's condition subsequent to
04 March 26, 1981.")

05       In April 2007 Dr. Hoskins, the State agency medical consultant, affirmed a
finding that the claimant could perform the full range of light work.  The
06 comments on the residual functional capacity form point to the normal
examination findings and the claimant's lack of follow up with specialty
07 referrals.  The undersigned concurs and adopts Dr. Hoskins' opinion that the
claimant retains the functional capacity for light work.

08

09 (AR 55-56; internal citations to record omitted.)

10       The ALJ provided clear and convincing reasons for finding plaintiff not credible,

11 including the failure to seek or follow through with treatment, *Tommasetti v. Astrue*, 533 F.3d

12 1035, 1039 (9th Cir. 2008), the existence of contradictory medical evidence, *Carmickle v.*

13 *Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008), an absence of corroborating objective

14 findings, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p, and various

15 inconsistencies in the record, *Light*, 119 F.3d at 792.  While plaintiff identifies a number of

16 minor issues, particularly in relation to the ALJ's comparison of various pieces of evidence, she

17 does not establish that the ALJ's interpretation of the evidence was unreasonable.  Also, even

18 if one or more of those comparisons could be faulted, any error could be deemed harmless in

19 light of the remaining valid reasons for the credibility assessment.  *Carmickle*, 533 F.3d at

20 1162-63.

21       However, as reflected above, the ALJ erroneously concluded that plaintiff's chronic

22 pain syndrome could not serve as a medically determinable impairment for purposes of

REPORT AND RECOMMENDATION
PAGE -20

01   assessing credibility.   (AR 51, n.1.)   This error, as well as errors in the consideration of the

02   medical evidence, necessitates reconsideration of plaintiff's credibility on remand.

Step Four

04        At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

05   assess work-related abilities on a function-by-function basis, including a narrative discussion.

06   *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.   RFC is the most a claimant can do

07   considering limitations or restrictions.   *See* SSR 96-8p. The ALJ must consider the limiting

08   effects of all of plaintiff's impairments, including those that are not severe, in determining RFC.

09   §§ 404.1545(e), 416.945(e); SSR 96-8p.   Here, the errors discussed above necessitate

10   reconsideration of the subsequent steps in the sequential evaluation, including assessment of

11   plaintiff's RFC and the determination of whether she can perform her past relevant work.

Appeals Council Evidence

13        Plaintiff argues that the Appeals Council erred in failing to remand her claims for a new

14   hearing in light of new evidence from Susan Chewing, LICSW, MHP.   Chewing, in a July

15   2010 Mental RFC Assessment, diagnosed plaintiff with PTSD and major depression, rule out

16   obsessive/compulsive personality, and assessed her as markedly and severely impaired in a

17   number of functional areas.   (AR 511-15.)   She requests that the Court find the Appeals

18   Council's failure to remand to be legal error.

19        Evidence submitted to the Appeals Council becomes part of the administrative record

20   for the purposes of this Court's review.   *See Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th

21   Cir. 2000); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Ramirez v. Shalala*, 8 F.3d 1449,

22   1451-52 (9th Cir. 1993).   The Court reviews such evidence pursuant to "sentence four" of 42

REPORT AND RECOMMENDATION
PAGE -21

01   U.S.C. § 405(g): "The court shall have power to enter, upon the pleadings and transcript of the

02   record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

03   Social Security, with or without remanding the cause for a rehearing." The Court, therefore,

04   determines whether there is substantial evidence to support the ALJ's decision even taking the

05   evidence submitted to the Appeals Council into consideration.[4]

06        In this case, there are other reasons supporting remand of this matter. The ALJ should

07   also, therefore, consider the evidence from Chewing in reassessing plaintiff's claims.

08                                               Remand

09        The Court has discretion to remand for further proceedings or to award benefits. *See*

10   *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of

11   benefits where "the record has been fully developed and further administrative proceedings

12   would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir.

13   2002).

14        Such a circumstance arises when: (1) the ALJ has failed to provide legally
     sufficient reasons for rejecting the claimant's evidence; (2) there are no

15   outstanding issues that must be resolved before a determination of disability can
     be made; and (3) it is clear from the record that the ALJ would be required to

16   find the claimant disabled if he considered the claimant's evidence.

17   *Id.* at 1076-77. *See also Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1401

18   _____

         4 The Commissioner avers that, because it is not the final agency action, the decision from the
19   Appeals Council is not itself subject to judicial review. However, the Ninth Circuit has clearly
     assumed jurisdiction to review a denial of review from the Appeals Council. *See Ramirez*, 8 F.3d at
20   1454-55 (finding that the Appeals Council erred in failing to find that the plaintiff met the requirements
     of a listing). While this Court may not be bound by such an assumption, *see, e.g., Sorenson v. Mink*,
21   239 F.3d 1140, 1149 (9th Cir. 2001) ("[U]nstated assumptions on non-litigated issues are not
     precedential holdings binding future decisions."); *Estate of Magnin v. Commissioner*, 184 F.3d 1074,
22   1077 (9th Cir. 1999) ("When a case assumes a point without discussion, the case does not bind future
     panels."), the Commissioner fails to identify any binding precedential authority upon which this Court
     could rely to support his position.

REPORT AND RECOMMENDATION
PAGE -22

01  (9th Cir. 1988) ("In cases where there are no outstanding issues that must be resolved before a

02  proper disability determination can be made, and where it is clear from the administrative

03  record that the ALJ would be required to award benefits if the claimant's excess pain testimony

04  were credited, we will not remand solely to allow the ALJ to make specific findings regarding

05  that testimony.")

06        The ALJ in this case did fail to provide legally sufficient reasons for rejecting plaintiff's

07  evidence.   That evidence includes opinions from examining physicians Drs. Knapp and

08  Gustafson assessing, *inter alia*, marked and severe limitations, and deeming plaintiff seriously

09  disturbed.   "Where the Commissioner fails to provide adequate reasons for rejecting the

10  opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of

11  law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony

12  were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d

13  498, 502 (9th Cir. 1989)).   Crediting an opinion as a matter of law is appropriate when, taking

14  that opinion as true, the evidence supports a finding of disability.   *See*, *e.g.*, *Schneider v.*

15  *Commissioner of Social Sec. Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay

16  evidence that the ALJ rejected is given the effect required by the federal regulations, it becomes

17  clear that the severity of [plaintiff's] functional limitations is sufficient to meet or equal [a

18  listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's reasoning for rejecting subjective symptom

19  testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully

20  developed and disability finding clearly required).

21        However, the Court does not find remand for an award of benefits appropriate in this

22  case.   *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further

01   determinations where there were insufficient findings as to whether plaintiff's testimony should

02   be credited as true).  While the limitations assessed by Drs. Knapp and Gustafson may well

03   eliminate all potential jobs at step five, the ALJ never proceeded to that step in this case.   Also,

04   considering the record as a whole, it cannot be said that there are no outstanding issues to be

05   resolved or that it is clear the ALJ would be required to find plaintiff disabled.   The record

06   contains contrary evidence from examining and reviewing physicians and a number of valid

07   reasons for the credibility assessment.   Reconsideration of this case, starting with proper

08   consideration of plaintiff's chronic pain and including the consultation of a medical expert,

09   would serve a useful purpose.

10       At the same time, the Court agrees with plaintiff's request for the assignment of a

11   different ALJ on remand.   The ALJ has "'a special duty to fully and fairly develop the record

12   and to assure that the claimant's interests are considered.'" *Widmark v. Barnhart*, 454 F.3d

13   1063, 1068 (9th Cir. 2006) (quoted source omitted).   With consideration of that duty in mind,

14   the Commissioner should assign plaintiff's case to a different ALJ on remand.   *See* Hearings,

15   Appeals and Litigation Law Manual 1-2-12-55(d)(11) ("Appeals Council remands, including

16   those generated by the courts, are assigned to the same ALJ who issued the decision or

17   dismissal unless: (a) the case was previously assigned to that ALJ on a prior remand from the

18   Appeals Council and the ALJ's decision or dismissal after remand is the subject of the new

19   Appeals Council remand, or (b) the Appeals Council or the court directs that the case be

20   assigned to a different ALJ.")

21   / / /

22   / / /

REPORT AND RECOMMENDATION
PAGE -24

01                                   **<u>CONCLUSION</u>**

02          For the reasons set forth above, this matter should be REMANDED to a different ALJ

03   for further administrative proceedings.

04          DATED this <u>19th</u> day of April, 2010.

05

06                                                    Mary Alice Theiler

07                                                    United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22